# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DANIEL GOLDSMITH,

    Plaintiff,

v.

                                Case No: 8:21-cv-2656-JSM-SPF

TRAVELERS INDEMNITY COMPANY
OF AMERICA,

    Defendant.

_____

SANDRA GOLDSMITH,

    Plaintiff,

v.                                  Case No: 8:22-CV-557-JSM-JSS

TRAVELERS INDEMNITY COMPANY
OF AMERICA,

    Defendant.

_____

## ORDER

This cause is before the Court upon the parties' Motions in Limine and their respective responses. Upon review of these filings, and being otherwise advised in the premises, the Court denies the motions in part and grants the motions in part.

## DISCUSSION

A district court's decision to exclude evidence is "an extraordinary remedy which should be used sparingly," and the court may exclude relevant evidence "only when *unfair* prejudice *substantially* outweighs probative value." *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983) (citation omitted) (emphasis in original). Thus, "the balance should be struck in favor of admissibility," and courts must "maximize[e] [the

evidence's] probative value and minimiz[e] its undue prejudicial impact." *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010).  A district court's "discretion to exclude evidence under Rule 403 is narrowly circumscribed." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006).  With these guidelines in mind, the Court addresses the motions in limine in the order they were filed.

I.      **Plaintiffs' Motion in Limine (Dkt. 62)**

Issue One – Any possible Fabre Defendants:

Defendant does not oppose this request because there are no Fabre Defendants, so this request is granted.

Issue Two – References to Morgan & Morgan, P.A.:

Plaintiffs move to exclude as follows: "[a]ny mention that Plaintiff is represented by Morgan & Morgan, P.A. or any reference to Morgan & Morgan or to advertising attorneys.  Such comment serves only to inflame the jury, is irrelevant and prejudicial, and puts the credibility of the lawyers of Morgan & Morgan at issue with the jury.  The lawyers from Morgan & Morgan are not witnesses in this case, thus their credibility is not at issue."

Defendant responds that it is necessary to refer to Morgan & Morgan for numerous reasons.  First, Defendant wants to question, during jury selection, whether any potential juror is biased regarding Morgan & Morgan.  Second, Morgan & Morgan is listed on many exhibits, like medical bills.  Third, Plaintiffs have multiple experts that have referenced Morgan and Morgan and Defendant wants to show bias to the extent that Plaintiffs' "Life-Care Planners" have a relationship with Morgan & Morgan.

Upon consideration, the Court concludes that Plaintiffs have not met their burden to establish prejudice so this in limine request is denied. It is undisputed that Morgan & Morgan was retained by Plaintiffs in this case and are representing Plaintiffs at trial. There is no reason to exclude this information. The Court will also permit the parties to question the potential jurors about any bias in favor of or against Morgan & Morgan. *See Martin v. JLG Indus., Inc.*, No. 806CV234T24TBM, 2007 WL 3202739, at *1 (M.D. Fla. Oct. 29, 2007) (holding that "the Court will allow Defendant to question potential jurors about these issues, and Plaintiff is free to question the jurors about their potential bias against lawyers who advertise and Morgan & Morgan in particular.").

Issue Three – Reference to when Plaintiffs contacted or hired an attorney:

Plaintiffs move to exclude any evidence regarding when Plaintiffs contacted or hired an attorney. They contend that "[s]uch evidence is irrelevant, prejudicial and would only be used to prove Plaintiff's litigiousness." The Court agrees that this evidence is irrelevant and certainly not probative of any issues in this case. Accordingly, the motion is granted on this issue.

Issue Four – Reference to benefits from collateral sources:

Plaintiffs broadly move to exclude any reference to benefits received from any collateral source. Defendant filed a motion in limine on the application of the recently enacted Section 768.0427(2), Florida Statutes, regarding the admissibility of past and future medical treatment and services expenses. The Court will discuss this matter in more detail when it addresses Defendant's motion in light of this recent change in Florida law.

Issues Five and Six – References to "more money" and "hired guns":

Plaintiffs move to exclude any statement that attorneys "always ask for more money than they expect to receive" and that the expert witnesses are "hired guns." Defendant does not oppose these requests, so the motion is granted as to these issues.

Issue Seven – References to Plaintiffs' attorney referring Plaintiffs to "any doctor":

Plaintiffs argue that the attorney-client privilege bars Defendant from asking whether Plaintiffs' attorneys referred them to "any doctor." Defendant responds that Florida's Third District Court of Appeals in *Araujo v. Winn-Dixie Stores, Inc.*, 290 So. 3d 936 (2019) noted that, while the attorney-client privilege bars the defense from asking the Plaintiffs whether their attorneys referred them to a doctor, it does not prevent the defense from questioning the doctors about referrals from Plaintiffs' attorneys. Accordingly, the in limine request is granted only to the extent that the attorney-client privilege precludes defense counsel from asking *Plaintiffs* whether his or her attorney referred them to a particular doctor for treatment. *See id.* at 939 ("Instead, Winn-Dixie asked Araujo's treating physician, a non-party, to testify about the percentage of his practice and income derived from referrals from the plaintiff's law firm. This line of questioning in order to establish a non-party witness' bias is not precluded.").

Issues Eight and Nine – References to admission of negligence and 2019 incident:

Plaintiffs move to exclude any references to Defendant's admission of negligence and a 2019 incident involving Plaintiff Mr. Goldsmith falling asleep in the park after drinking too much. Defendant does not oppose these requests, so they are granted.

## II. Defendant's Motions in Limine

Defendant filed a number of motions in limine. After conferring with Plaintiffs' counsel, Defendant indicates that the following matters are unopposed: "any testimony regarding Dr. Didio's alleged work for another insurance carrier" (Dkt. 63); "any evidence or argument related to Plaintiffs' Underinsured/Uninsured Motorist Insurance Contract" (Dkt. 64); and "improper bolstering of one Plaintiff Expert by another" (Dkt. 67). Accordingly, the Court grants these motions as unopposed and turns to the issues that the parties could not reach agreement.

Opposed Motion on Past and Future Medical Treatment or Services Expenses (Dkt. 65):

Defendant's motion implicates Florida Statute § 768.0427, a new law that was recently passed by the Florida legislature as part of House Bill 837's tort reform package. 2023-15 Fla. Laws 10-13. The law restricts admissible evidence of medical damages in personal injury actions to amounts actually paid or those that the claimant would be obligated to pay. Fla. Stat. § 768.0427(2). Plaintiffs point out that: "[i]n essence, [§ 768.0427] reverses application of the collateral source doctrine." Under pre-existing Florida law, collateral sources are used by the court to reduce a jury's award post-verdict. *See* Fla. Stat. § 768.76. Under § 768.0427, however, collateral sources are considered by the jury in its determination of damages.

Notably, the legislature included a section explicitly defining the law's temporal applicability: "[e]xcept as otherwise expressly provided in this act, this act shall apply to causes of action filed after the effective date of this act." Fla. Stat. § 768.0427(30). The

next section affirms that the act took effect upon becoming law when Governor Ron DeSantis approved it on March 24, 2023. *Id.* at § 768.0427(31).

This action was filed in state court well before March 24, 2023. The Court agrees with Plaintiffs and the majority of courts that have considered this matter that, based on the plain meaning of the statute, § 768.0427 is inapplicable to this action. Indeed, the "plain meaning of the statute is always the starting point in statutory interpretation." *Alachua Cnty. V. Watson*, 333 So. 3d 162, 169 (Fla. 2022) (quoting *GTC, Inc. v. Edgar*, 967 So. 2d 781, 785 (Fla. 2007)). "Statutes are presumed to be prospective in application unless the Legislature manifests an intention to the contrary." *Fleeman v. Case*, 342 So. 2d 815, 817 (Fla. 1976).

"Here, there is no indication that the legislature intended the statute to apply retroactively. The statute expressly provides that it applies prospectively." *McConnell v. Costco Wholesale Corp.*, No. 3:22-CV-646-TJC-MCR, 2023 WL 6439573, at *2 (M.D. Fla. Oct. 3, 2023) (holding that section 768.0427 applied prospectively and noting that: "Most, but not all, state trial courts have so far agreed.") (citing *Williams v. Wolf*, No. 16-2019-CA-008017 (Fla. 4th Cir. Ct. June 15, 2023); *Miskiel v. Dukes*, No. 2018-CA-2401 (Fla. 6th Cir. Ct. June 2, 2023); *Rizzolo v. Atkins*, No. 2023-CA-4136 (Fla. 4th Cir. Ct. Aug. 4, 2023)). Accordingly, Defendant's motion to apply section 768.0427 retroactively is denied. The Court also concludes that the collateral source rule is applicable to this action.

Case 8:21-cv-02656-JSM-SPF   Document 80   Filed 01/11/24   Page 7 of 10 PageID 1767

<u>Opposed Motion Regarding "Possible" Future Treatment (Dkt. 66)</u>:

Defendant contends that Plaintiffs identified "numerous experts," including Life Care Planners Dr. Bharat Patel and Dr. Neil Ghodadra. At these experts' depositions, they discussed "possible" future medical care. Defendant argues that this testimony is inadmissible to the extent that it relates to only possible care.

The Court reserves ruling on this matter because the request it is too vague to allow the Court to analyze the specific testimony without hearing it in context. As Plaintiffs point out in their opposition, Defendant did not cite to any specific testimony or provide the deposition transcripts. Defendant also failed to cite to any applicable law on this issue. If Plaintiff intends to question any expert about *possible* treatment, counsel shall approach the bench and get a ruling in advance. Accordingly, this motion is denied without prejudice to raise any objection at trial.

<u>Opposed Motion Regarding Expert/Legal Opinions in Medical Records (Dkt. 68)</u>:

Defendant argues that Plaintiffs "may attempt to introduce reports/records from the plaintiffs' treating physician's [sic], which contain expert/legal opinions related to the causal link between this accident and the plaintiff's claimed injuries." Like the last issue discussed, Defendant's request is too broad for the Court to rule on without reviewing the specific report or record at issue. When the parties exchange exhibits, they shall work in good faith to address and resolve any objections. If there are matters that they cannot agree on, they shall inform the Court at the pretrial conference and be prepared to present argument on the specific objection. Accordingly, this motion is denied without prejudice.

<u>Opposed Motion to Exclude/Strike Opinions of Darren Buono, M.D. (Dkt. 69)</u>:

Defendant seeks to exclude the opinions of Darren Buono, M.D., who is Plaintiff Sandra Goldsmith's expert. Dr. Buono reviewed and interpreted certain head and brain imaging and prepared reports based on his review of the imaging: a. Diffusion Tensor Imaging ("DTI") report and Brain NeuroQuant report. Defendant seeks to exclude Dr. Buono's opinions based on his use of DTI in relation to Sandra Goldsmith's brain injury diagnosis.

Bouno's specialty is in diagnostic radiology. Since 2014, he has owned his own company, Star Radiology, to provide consulting services. Before that, he was a partner in SDI Radiology in Tampa, providing reading services to Bay Care Hospitals, including St. Joseph's Hospital.

Defendant quibbles with the reliability of Bouno's use of DTI but, as Plaintiffs point out in response, Defendant has not presented any evidence that DTI is not generally accepted in the medical community for use in diagnosis of traumatic brain injury at the individual patient level. Defendant has not produced any admissible evidence from any expert in this case that this imaging methodology is unreliable or not generally accepted in the scientific community. Defendant's neuropsychological expert, Dr. Henley, referenced the subject imaging studies in her own report and stated, "comprehensive imaging from 2022 indicated axonal injury and other subcortical abnormalities identified to be consistent with traumatic brain injury."

Also, Defendant does not cite to any cases that have concluded that the use of DTI is unreliable. To the contrary, courts have consistently concluded that DTI is a reliable

methodology. "DTI findings and testimony have been deemed reliable and admitted by courts across the country for almost a decade." *Marsh v. Celebrity Cruises, Inc.*, Case No. 1:17-cv-21097-UU, 2017 WL 6987718, at *3 (S.D. Fla. Dec. 15, 2017) (citing *Andrew v. Patterson Motor Freight, Inc.*, 2014 WL 5449732, at *8 (WD. La. 2014) ("In sum, the evidence submitted shows DTI has been tested and has a low error rate, DTI has been subject to peer review and publication, and DTI is a generally accepted method for detecting TBI.")).

Indeed, numerous courts have addressed challenges to the use of DTI and have "found DTI data to be reliable, helpful, and admissible." *Ward v. Carnival Corp.*, CASE NO. 17-24628-CV-SCOLA/TORRES, 2019 WL 1228063, at *8 (SD. Fla. March 14, 2019). "DTI of the brain is a proven and well-established imaging modality in the evaluation and assessment of normal and abnormal conditions of the brain." *Marsh*, at *3 (citing *Roach v. Hughes*, 2016 WL 9460306, at *3 (W.D. Ky. March 9, 2016)). "DTI is regularly used as a diagnostic tool." *Id.* (citing *Rappel v. Kucanin*, 2011 WL 2470621, at *7 (N.D. Ind. June 20, 2011)).

Additionally, like the expert in *Marsh*, Dr. Buono did not rely solely on DTI, but rather used DTI as one of several diagnostic tools to reach his conclusions. For the same reasons discussed in *Marsh*, the Court concludes that the challenged methodology is sufficiently reliable. Defendant's arguments are more appropriate on cross-examination. Accordingly, the motion is denied.

It is therefore **ORDERED and ADJUDGED** that the parties' Motions in Limine are granted in part and denied in part.

**DONE** and **ORDERED** in Tampa, Florida, this January 11, 2024.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record